UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MAURICE GALLION, as Administrator                                                PLAINTIFF
of the Estate of TRACEY GALLION, SR.,
and on behalf of and as natural uncle of
TRACEY GALLION, JR., a minor, and on
behalf of all heirs and wrongful death
beneficiaries of TRACEY GALLION,
SR., deceased

v.                                                    CIVIL ACTION NO. 3:12cv736-DPJ-FKB

HINDS COUNTY, MISSISSIPPI, et al.                                               DEFENDANTS

ORDER

This § 1983 case is before the Court on the motion of Defendants Sheriff Tyrone Lewis, Warden Calvin Matthews, Lieutenant Stanley Thurman, and Ruth Wyatt, RN, in their individual capacities, to dismiss or for summary judgment on the basis of qualified immunity [19, 21], along with their motion to strike [41]. For the reasons that follow, the motions are granted.

I.      Facts and Procedural History

Plaintiff's decedent, Tracey Gallion, Sr., was booked into the Hinds County Detention Facility ("HCDF") in Raymond, Mississippi, on March 10, 2012. The jail intake form listed, under Medical Needs, only that Gallion "states he has vericos [sic] veines [sic] lower left leg." Inmate Records [21-3] at 17.

On March 27, 2012, Gallion submitted a Health Services Request Form, complaining that he "ha[d] a chest cold, nose running and [his] leg want [sic] let [him] sleep." Deposition Exhibits [38-6] at 92. The form indicated that Gallion had been suffering from these problems for the duration of his time at HCDF and stated that he was using an "asthma pump" and taking

Lunesta and Allegra for sinuses.[1]  *Id.*  That document was stamped "received," but neither the form nor Gallion's medical records indicate that any medical professionals at HCDF addressed Gallion's March 27 request.  Gallion submitted another Health Services Request Form on April 3, 2012, stating that he was "short of breath and need[ed his] pump."  *Id.* at 91.  That form was also stamped "received," but the medical records do not reflect that Gallion received any care until April 5, 2012.

On the evening of April 5, 2012, at approximately 7:08 p.m., two inmates escorted Gallion out of his cell unit and explained that Gallion needed medical attention because he was having difficulty breathing.  Lieutenant Stanley Thurman, who was the shift supervisor on duty that evening, and Officer Weathersby were both present at that time.  One of them instructed Officer Mary Gainwell to call medical, which she did.  At approximately 7:20 p.m., Nurse Travis Williams and Medical Officer Shawonda Owens from HCDF medical responded to find Gallion on the floor, complaining that he could not breathe.  The medical personnel concluded that Gallion "appeared to just be out of breath due to hyper-ventilation."  Medical Records [21-4] at 5.  Medical personnel allowed Gallion to remain in the hallway to catch his breath, at which point he returned to his cell unit.  Williams and Owens left the cell area at approximately 7:30 p.m.

Just an hour later, at 8:30 p.m., Officer Weathersby called medical for Gallion for the second time.  Medical Officer Marion Hayes arrived at approximately 9:35 p.m. and escorted Gallion to the medical facilities, where he was given a breathing treatment.  Following the breathing treatment, Gallion indicated that he felt better, and he was escorted back to his cell unit

---

[1] It is not clear whether Gallion meant he had been taking those medications while incarcerated or prior to his detention.

at around 9:59 p.m.  The medical personnel who handled Gallion on the evening of April 5, 2012, put him on a list of inmates to see a medical doctor the following day.[2]

On the morning of April 6, 2012, Dr. Lawrence Sutton saw Gallion for complaints of "no appetite, bronchitis & a cold."  Medical Records [21-4] at 7.  Dr. Sutton ordered Gallion transferred to Central Mississippi Medical Center ("CMMC") for further evaluation.  At CMMC, Gallion "became unresponsive in the ER while awaiting diagnosis."  Autopsy Report [38-1] at 3.  Gallion was admitted to the hospital ICU with the diagnosis of pulmonary embolism and cardiac arrest.  Gallion ultimately developed multi-system organ failure and died on April 23, 2012.

Plaintiff Maurice Gallion, acting as Administrator of the Estate of Gallion and on behalf of his nephew Tracey Gallion, Jr., and all heirs and wrongful death beneficiaries of Gallion, filed this lawsuit on November 1, 2012.  Plaintiff asserts § 1983 claims for denial and/or delay of medical care against Hinds County, Mississippi, and Sheriff Lewis, Warden Matthews, Lieutenant Thurman, and Nurse Wyatt, in their individual and official capacities.  The individual-capacity defendants filed their qualified-immunity motions on March 22, 2013, and a lengthy period of immunity-related discovery ensued.  The immunity issues have now been fully briefed, and the Court has personal and subject-matter jurisdiction and is prepared to rule.

---

[2]The times included in this factual summary come from the log maintained in the control room for the cell pod in which Gallion was housed.  Deposition Exhibits [38-6] at 88–89.  They are not consistent with the incident reports completed by the medical personnel who attended to Gallion on April 5, 2012, which indicated that Gallion spent a "couple of hours" in medical before being returned to his pod.  Medical Records [21-4] at 3, 5.  Viewing the timeline in the light most favorable to Gallion, the Court accepts the times reflected in the log.

II.     Standard

Although Defendants moved alternatively for dismissal under Rule 12(b)(6) and for summary judgment under Rule 56, the parties engaged in immunity-related discovery and have submitted evidence in support of their respective positions.  The Court will consider the motion under Rule 56.  Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

In general terms, Plaintiff asserts that Gallion was denied or received delayed medical care while incarcerated, in violation of his constitutional rights, and that the denial and/or delay of medical care caused his death.  To establish a constitutional violation in the form of denied or delayed medical care, a plaintiff must prove "'objectively that he was exposed to a substantial risk of serious harm' and that 'jail officials acted or failed to act with deliberate indifference to that risk,' which requires actual knowledge and deliberate disregard."  *Victoria W. v. Larpenter*, 369 F.3d 475, 483 (citing *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002)).  "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (footnote and citation omitted).

Defendants, in their individual capacities, all seek qualified immunity on Plaintiff's claims against them.  Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense.  *Hamptom v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).  In the summary-judgment posture the Court "'looks to the evidence before it (in the light most

favorable to the plaintiff.)'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the Court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (alteration in original) (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

"The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (citations omitted). Thus, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights." *Id.* (citations omitted). Whether the official acted with objective reasonableness is an issue of law reserved for the Court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

In this case, only one of the three individual defendants—Lieutenant Thurman—had any personal interaction with or knowledge of Gallion during his incarceration. Plaintiff appears to seek to hold the other individuals—Sheriff Lewis, Warden Matthews, and Nurse Wyatt—liable as supervisors under § 1983. A supervisory official who does not affirmatively participate in the acts that cause the alleged constitutional violations may be liable if "he implements

6

unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).  A plaintiff seeking to establish supervisory liability under § 1983 must prove that the supervisor "act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by [his] subordinates."  *Id.*  "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."  *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation omitted).  Similarly, a supervisor can be liable for a failure to train if a plaintiff shows "that a particular omission in [the supervisor's] training program causes . . . employees to violate citizens' constitutional rights."  *Id.* at 447 (citing *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011)).  In either case, "[a] pattern of similar constitutional violations [as a result of the failure to adopt a policy] is ordinarily necessary to demonstrate deliberate indifference."  *Id.* at 447 (citation omitted); *see Tipps v. McCraw*, No. SA-12-cv-766-DAE, 2013 WL 5929705, at *4 (W.D. Tex. Nov. 1, 2013) ("Any less stringent standard . . . would turn a failure-to-train claim (or failure-to-promulgate-policy claim) into 'de facto *respondeat superior* liability." (citing *Porter*, 659 F.3d at 447) (additional citation omitted))).

Having laid out the appropriate legal standards, the Court will address the claims against the individual defendants separately.

    A.    Sheriff Lewis

Plaintiff premises Lewis's liability on his failure to adopt a Medical Emergency policy and his alleged failure to adequately train his subordinates.  Assuming an underlying

constitutional violation took place, Plaintiff has not demonstrated that Lewis acted with deliberate indifference.

Lewis took office as Sheriff of Hinds County in January 2012, just two months before Gallion arrived. At that time, he implemented policies and procedures for the HCDF, including an Inmate Health Services Plan and a Sick Call procedure. Medical Policies [21-5]. The former plan references a Medical Emergency policy, but the evidence suggests that no separate Medical Emergency policy now exists. *Id.* at 3. Plaintiff baldly asserts that "[h]ad . . . a '*Medical Emergency* policy' existed while Tracey Gallion was incarcerated, his death would have been prevented." Pl.'s Resp. [38] at 7. Plaintiff further states that Lewis did not provide "any additional training other than to provide [his subordinates] with the polices and procedures." *Id.* But Plaintiff fails to show a pattern of similar constitutional violations resulting from a failure to adopt a medical emergency policy or a particular omission in Lewis's training program. In fact, Plaintiff does not identify a single similar occurrence.

Finally, the cases Plaintiff cites in support of deliberate indifference apply when a defendant is personally involved in an inmate's treatment. *See, e.g.*, *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Lewis had no such involvement. Plaintiff has not established that Lewis was deliberately indifferent, and Lewis is therefore entitled to qualified immunity.

B.   Warden Matthews

In his response to Defendants' motion, Plaintiff makes a single allegation with respect to Warden Matthews: he "had not even read the policy manual upon taking his position" as warden of the HCDF. Pl.'s Resp. [38] at 9. Nothing in the record suggests that Matthews—as opposed

8

to Lewis—was responsible for adopting policies and procedures for HCDF so as to give rise to supervisory liability.  And Plaintiff makes no attempt to demonstrate that Matthews acted with deliberate indifference.  Matthews is entitled to qualified immunity.

      C.      Nurse Wyatt

Plaintiff asserts that Wyatt, who was the medical director at HCDF from March to September 2012, can be individually liable for "her personal involvement with the medical personnel as well as her failure to implement a *Medical Emergency* policy."  Pl.'s Resp. [38] at 5.  Plaintiff continues that "[a]pparently, Nurse Wyatt . . . did not properly train and evaluate the medical staff under her control due to the fact that no doctor was ever called . . . ."  *Id.*

These allegations are not sufficient.  As with Sheriff Lewis, Wyatt was not involved in Gallion's treatment.  Even assuming Plaintiff could show that some deficiency in Wyatt's supervision or training of the medical staff or her failure to adopt a medical emergency policy caused Gallion to suffer an alleged constitutional violation, Plaintiff has not demonstrated deliberate indifference.  *See Porter*, 659 F.3d at 447 ("A pattern of similar constitutional violations [as a result of the failure to adopt a policy] is ordinarily necessary to demonstrate deliberate indifference.").  Absent personal involvement or deliberate indifference, Wyatt cannot be held individually liable.

      D.      Lieutenant Thurman

Unlike the other defendants, Thurman had personal contact with Gallion.  Thurman was present on April 5, 2012, when Gallion first indicated he needed medical attention.  While Plaintiff asserts that Thurman "did not even call for medical assistance," Pl.'s Resp. [38] at 9, the undisputed evidence shows that another officer with Thurman, Gainwell, called medical at that

9

time, and medical responded as a result.  *See* Thurman Dep. 20 [39-2]; Gainwell Dep. [39-1] 19; Deposition Exhibits [38-7] at Ex. 4 (76–80), Incident Reports.

Plaintiff also asserts that, according to an unidentified witness, while Gallion was struggling to breathe on April 5, 2012, Thurman "waved down on him saying something like, 'O, ain't nothing wrong with him.'"  Witness Statement [38-2].  Defendants have moved to strike this witness statement, asserting that it is unsigned, does not comply with Rule 56(c)(4), and is inadmissible hearsay, all of which is true and unrebutted.  But even if the Court were to consider the statement, Thurman's comment does not itself establish a constitutional violation and does not demonstrate deliberate indifference, given that Thurman and the other officers obtained medical assistance for Gallion at the time the statement was allegedly made.  *See Brown v. Craven*, 106 F. App'x 257, 258 (5th Cir. 2004) ("[A]s a rule, mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." (internal quotation marks and citation omitted)).  Because Thurman did not deny or delay Gallion medical care, he is entitled to qualified immunity.

    E.    Motion to Strike [41]

Finally, Defendants filed a motion to strike the witness statement discussed above as well as a portion of Gallion's Autopsy Report.  The portion of the Autopsy Report sought to be struck states that Gallion's "chief complaint [upon admittance] was shortness of breath and non productive cough along with chest and abdominal pain.  Per hospital records, the symptoms reportedly began 4 days prior to presenting to the hospital and have worsened."  Autopsy Report [38-1] at 3.  Defendants correctly assert that this statement is both hearsay within hearsay and excludable under Federal Rule of Evidence 1002.

As to the hearsay objection, Plaintiff offers the report to establish the truth of the matter allegedly asserted by Gallion to hospital personnel upon his admittance: that his symptoms began four days before April 6, 2012. But both layers of hearsay may be subject to exceptions to the rule of inadmissibility under Federal Rule of Evidence 803(4) and 803(6). However, Plaintiff cannot overcome the problem associated with his reliance on the autopsy report to establish what the medical records provide. Fed. R. Evid. 1002 ("An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise."). And as Defendants point out, the underlying medical records on which the autopsy report rely indicate that Gallion reported that his symptoms began four *hours* prior to his presentation at CMMC, not four days before he went to the hospital. Mot. to Strike [41] Ex. A at HC-Gallion 001293 ("onset s/s 4 hr ago."). The motion to strike is well-taken as to the objectionable statement in the autopsy report.

As to the statement of the unidentified witness, the Court agrees that it is hearsay and fails to comply with Federal Rule of Civil Procedure 56(c)(4). The statement "cannot be used to defeat summary judgment because [it is] unauthenticated, [it is] not in the form of an affidavit, and [it does] not indicate that [it is] 'made on personal knowledge' as required by Federal Rule of Civil Procedure 56[(c)(4)]." *Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 332–33 (5th Cir. 2007). Plaintiff has not come forward with an argument "explain[ing] the admissible form that is anticipated."[3] Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments. The motion to strike is granted.[4]

---

[3]Plaintiff has not responded to the motion to strike at all, and the time to do so has now passed. Under Local Rule 7(b)(3)(E), the Court alternatively grants the motion as unopposed.

[4]The Court notes that its conclusions on the motion for summary judgment would not have been affected even if the inadmissible evidence was not stricken.

IV.    Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, the motions of Defendants Sheriff Tyrone Lewis, Warden Calvin Matthews, Lieutenant Stanley Thurman, and Ruth Wyatt, RN, in their individual capacities, to dismiss or for summary judgment on the basis of qualified immunity [19, 21] are granted and the individual-capacity claims are dismissed. The motion to strike [41] is also granted. The parties are directed to contact the magistrate judge within five days of entry of this order to set the matter for a case management conference.

**SO ORDERED AND ADJUDGED** this the 26th day of February, 2014.

                                            s/ *Daniel P. Jordan III*
                                            UNITED STATES DISTRICT JUDGE